THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| United States of America | Cr. No. 0:17-00908-CMC |
| v. | |
| JIMMY ALLEN HUNTER, | **OPINION and ORDER** |
| Defendant. | |

Acting *pro se*, Jimmy Allen Hunter ("Hunter") filed the instant motion on Form AO 243—Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody (Rev. 09/17). Liberally construing its content, as we must, *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012), Hunter challenges as invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his guilty plea and conviction for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 50. The Government responded by filing a motion for summary judgment. ECF Nos. 60, 60-1. Hunter did not file a reply. This matter is ripe for resolution.

### I. Procedural Background

On October 4, 2017, a federal grand jury returned an indictment ("the Indictment"), charging Hunter with a single count of being a felon in possession of a firearm, specifically charging:

> On or about September 1, 2017, in the District of South Carolina, the defendant, **JIMMY HUNTER**, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, firearms and ammunition, that is, an Anderson model AM15, .223 caliber rifle, a Mossberg (Companhia Brasiliera) model 702 Plinkster, .22 caliber rifle, a Romarm/Cugir model M-10, 7.62 caliber rifle, a Mossberg Maverick model 88, 12 gauge shotgun, a Springfield/Stevens 12 gauge shotgun, a

> Gerstenberger U. Eberwein .32 caliber revolver and an assortment of ammunition, all of which had been shipped and transported in interstate and foreign commerce;
>
> In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

ECF No. 17 at 1.

On November 16, 2017, Hunter entered into a plea agreement ("the Plea Agreement") with the Government to plead guilty to Count 1.[1]  ECF No. 31.  Of note, paragraph seven of the Plea Agreement provided:

> The Government agrees that so long as the sentence imposed in this matter is 57 months or higher, the Government will not charge any other potential crimes that arise from this same incident.  However, if the sentence is lower than 57 months, the Government reserves the right to seek additional charges for related conduct.

*Id.* at 6.  At Hunter's guilty plea hearing the same day, the court highlighted this provision for Hunter and asked him to confirm whether he understood if the Government is not satisfied with his sentence because it is less than fifty-seven months imprisonment, the Government could potentially charge him with other offenses.  ECF No. 60-6 at 4.  Hunter answered: "I do, yes, ma'am."  *Id.*  The court next observed it had not seen that type of provision before in a plea agreement.  *Id.*  In response, the following exchange took place between the court, counsel for the Government, William Witherspoon, and counsel for Hunter, Alan Burnside:

_____

[1] The Plea Agreement contained language whereby Hunter waived his rights to pursue an appeal or file a motion under 28 U.S.C. § 2255 with limited exceptions.  ECF No. 31 at 7-8.  The Government does not argue this waiver applies or seek to enforce it in any way.  Therefore, this court will not address the matter further.  *See United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (declining to enforce *sua sponte* an appeal waiver in a plea agreement because the Government did not seek to enforce it).

MR. WITHERSPOON: This was just something that Mr. Burnside and I conferred on. Judge, the only -- and when we get into the facts you'll understand. The only other offense I think we could charge him with would be possession of methamphetamine, possession with intent, which carries a 5- to 40-year sentence, and the 922(g) is a 57- to 71-month sentence. So the compromise was if he could get at least 57 months, we would not then charge the 5- to 40-year sentence, the drug charge.

THE COURT: Okay. Mr. Burnside, do you agree?

MR. BURNSIDE: I do, Your Honor. We came up -- we have estimated the guideline range to be 57 to 71 months with the help of Mr. McCooley and the probation office. We do think that's going to be the range and we don't intend to argue for less than 57 months.

THE COURT: So even though it's not a stipulation and that you are bound by it, you don't intend to argue for less because if you do, he will potentially charge you with the meth.

MR. BURNSIDE: Correct, Your Honor.

THE COURT: Okay. I understand. All right.

*Id.* at 4-5.

During the plea colloquy, the Government gave the following recitation of facts it would be able to show if Hunter elected to go to trial:

During the [execution of a] search [warrant] of [Mr. Hunter's] house, they found the guns listed in the indictment inside a gun safe that was open in the bedroom that Mr. Hunter lived in or slept in. They also found more than 3,000 rounds of ammunition in the house that Mr. Hunter had.

Mr. Hunter was arrested. During his arrest he told the officers that had he had his machine gun, he would have mowed them down.

Your Honor, also while he was arrested in custody in state court -- state custody, they were listening to his phone calls. He asked his mother on the phone, did the police get all of my guns, which gives an indication that the guns found in the house also belonged to him.

3

>        At the time, Your Honor, all those guns had been transported -- had been
>   made outside the state of South Carolina and had traveled in interstate commerce.
>
>        At that time, Your Honor, he had been convicted in 2005 of pointing and
>   presenting. He had also been convicted of unlawfully carrying of a weapon. He
>   has also been convicted of unlawful carrying a weapon again in 2005. And based
>   upon that, Your Honor, those are the charges.

ECF No. 60-6 at 6. Following the Government's factual recitation, Hunter answered questions by

the court, affirmatively admitting: (1) on or about September 1, 2017, he previously had been

convicted of a crime for which he could have received a sentence of imprisonment exceeding one

year; (2) on September 1, 2017, he was in knowing possession of the firearms and ammunition

"just mentioned" in the Government's recitation of the facts; (3) the firearms and ammunition in

the safe belonged to him; and (4) the firearms and ammunition were made outside South Carolina.

*Id.* at 7.

        After the court confirmed Hunter understood all the court had gone over and he had no

questions, Hunter pled guilty to Count 1, pursuant to the Plea Agreement. ECF Nos. 32, 33, 60-6

at 8. Notably, in conducting the plea colloquy on Count 1, the court followed then current law and

did not advise Hunter knowledge he had been convicted of a crime punishable by imprisonment

exceeding one year at the time he possessed the firearms and ammunition at issue was an element

of the offense. *See United States v. Langley*, 62 F.3d 602, 604-08 (4th 1995) (*en banc*) (holding

defendant's knowledge of his felony status is not essential element of offense under §§ 922(g)(1)

and 924(a)(2)), *abrogated by Rehaif*, 139 S. Ct. at 2194.

        A Pre-Sentence Investigation Report ("the PSR") set forth all information necessary to

calculate Hunter's advisory sentencing range under the United States Sentencing Guidelines

4

("USSG" or "the Guidelines"). [2] ECF No. 44. The PSR calculated Hunter's total offense level at twenty-five and his criminal history category at III, producing an advisory sentencing range under the Guidelines of seventy to eighty-seven months imprisonment. *Id.* at ¶¶ 60, 90, 111. Notably, by pleading guilty, Hunter received a three-level decrease in his total offense level for acceptance of responsibility. *Id.* at ¶¶ 88-89. Without this decrease, Hunter's advisory sentencing range would have been ninety-seven to 121-months imprisonment. USSG Ch. 5, Pt. A (Sentencing Table) (2016).

With respect to Hunter's criminal history, the PSR reported he had been convicted of the following crimes punishable by imprisonment for a term exceeding one year: (1) an April 2005 South Carolina state court conviction for pointing and presenting firearms at a person, for which he was sentenced to five-years imprisonment, suspended on service of ninety-one days imprisonment and five-years probation, ECF No. 44 at ¶ 54; (2) an April 2005 conviction for habitual traffic offender, for which he was sentenced to three-years imprisonment, suspended on service of ninety-one days imprisonment and five-years probation, *id.*; (3) an April 2005 conviction for possession of marijuana, second offense, for which he was sentenced to one-year imprisonment, suspended on service of ninety-one days imprisonment and five-years probation, *id.*; (4) an April 2005 conviction for unlawful carrying of a weapon, for which he was sentenced to one-year imprisonment, suspended on service of ninety-one days imprisonment and five-years probation, *id.*; (5) an April 2006 conviction for habitual traffic offender, for which he was

---

[2] Hunter was sentenced under the 2016 Guidelines Manual, effective November 1, 2016, which remained in effect through October 31, 2018.

sentenced to two-years imprisonment, *id.* at ¶ 55; and (6) an April 2006 conviction for carrying a prohibited weapon, for which he was sentenced to one-year imprisonment, *id.*  With respect to his April 2005 convictions, Hunter was initially released from custody and began supervision on June 17, 2005.  ECF No. 44 at ¶ 54.  Hunter returned to custody on March 6, 2006, to serve concurrent five-year terms of imprisonment on each of his April 2005 convictions following revocation of his prior sentences due to Hunter's numerous probation violations.  Hunter served these concurrent sentences and the concurrent sentences on his April 2006 convictions until his release from custody on or about October 31, 2008.  *Id.* at ¶¶ 54-55.  For all of these convictions, Hunter had not received any pardons or restoration of his rights to legally own or possess a firearm.  ECF No. 44 at ¶ 21.

In support of its motion for summary judgment on Hunter's § 2255 motion, the Government submitted copies of sentencing sheets for three of Hunter's state court convictions, to which Hunter attested, via his signature, he had been committed to the South Carolina Department of Corrections for a definite term of imprisonment exceeding one year (*i.e.*, five years, three years, and two years respectively).  ECF Nos. 60-2 at 2-3, 60-4 at 2.  The Government also submitted a copy of the South Carolina Department of Corrections form Hunter signed on June 17, 2005, upon his release from custody with respect to his April 2005 convictions.  ECF Nos. 44 at ¶ 54, 60-3 at 2.  The heading of the document is "GUN CONTROL ACT OF 1968."  ECF No. 60-3 at 2.  In relevant part, the document warned Hunter: (1) part of the Gun Control Act of 1968 makes it "UNLAWFUL" for a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," (2) "if the sentence you are finishing was the result of a conviction for a <u>FELONY</u> for which the punishment that might have

6

been given was greater than one (1) year, the Gun Control Act applies to you"; and (3) "It makes no difference how long you actually served if the maximum time you could have received was greater than the one (1)" year. "For example, if you are sentenced to one (1) year suspended upon the service of six (6) months, but the maximum you could have received was three (3) years, THE ACT APPLIES TO YOU." *Id.* By signing at the conclusion of the document, Hunter acknowledged he "ha[d] been read and given a copy of the Gun Control Act of 1968" and he was "aware of and understood how this Act applie[d] to [him]." *Id.* An employee of the South Carolina Department of Corrections signed the form as a witness to Hunter's signature. *Id.* Hunter signed a copy of the same form in the presence of a witness on October 7, 2008, less than one month prior to his release from custody on October 31, 2008. ECF No. 60-5 at 2.

Hunter raised no objections to the PSR, ECF No. 44-2, and the court sentenced him on February 22, 2018, to seventy-eight months imprisonment and three-years supervised release. ECF Nos. 43, 45. Hunter did not file a direct appeal.

Within one year of the Supreme Court's June 21, 2019 decision in *Rehaif*, 139 S. Ct. at 2191, Hunter filed the instant § 2255 motion on April 27, 2020. ECF No. 50. Although Hunter does not specifically reference *Rehaif*, the context and content of his motion make clear he presses a *Rehaif* claim. The Government agrees, and in response, moved for summary judgment, urging the court to deny the motion. ECF No. 60-1. The Government concedes Hunter's § 2255 motion is timely and "accepts" *Rehaif* provides a new substantive rule which is retroactive on collateral review because it narrowed the class of persons the law punishes. ECF No. 60-1 at 7. *See Schriro v. Summerlin*, 542 U.S. 348, 351-53 (2004) (new substantive rule which "alters the range of

7

conduct or the class of persons that the law punishes," falls outside general bar on retroactivity). Despite having ample time to do so, Hunter did not file a reply.

## II.  Hunter's *Rehaif* Claim

In relevant part, § 924(a)(2) provides: "Whoever knowingly violates subsection [(g)] of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).  Always beginning with the word "who," subsection (g) of § 922 in turn has nine subsections listing nine different statuses making it "unlawful" for a person "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* § 922(g).  Among the nine statuses listed in § 922(g) are "any person": (1) "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," *id.* § 922(g)(1); (2) "who has been adjudicated as a mental defective or has been committed to a mental institution," *id.* § 922(g)(4); or (3) "who, being an alien--(A) is illegally or unlawfully in the United States," § 922(g)(5).

In *Rehaif*, a jury convicted the petitioner-defendant ("Rehaif") of being an alien unlawfully in the United States in possession of firearms, in violation of §§ 922(g)(5) and 924(a)(2).  139 S. Ct. at 2194.  At trial, Rehaif objected to the court's jury instruction "that the 'United States is not required to prove' that Rehaif 'knew that he was illegally or unlawfully in the United States,'" at the time he possessed the firearms as alleged in the indictment.  *Id.*  The court overruled the objection, the jury convicted Rehaif, and the court sentenced him to eighteen-months imprisonment.  *Id.*  Rehaif appealed, challenging the instruction, but the Eleventh Circuit affirmed. *Id.* at 2195.  The Supreme Court granted *certiorari*.  *Id.*

8

The *Rehaif* Court posed the question to be answered as follows: "Does [the word 'knowingly' in § 924(a)(2)] mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" *Id.* at 2194. In the immediately following sentence, the Court answered the question by holding "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* In its conclusion, the *Rehaif* Court restated its holding as follows: "[I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the Defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."[3] *Id.* at 2220.

**A. Scope of a Defendant's Knowledge as Required by *Rehaif*.**

Before proceeding further in addressing Hunter's *Rehaif* claim, the court must address a threshold question regarding the scope of a defendant's knowledge as required by *Rehaif* in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2). According to Hunter, the court failed to inform him of two essential elements of the offense—(1) at the time he possessed the firearms and ammunition as alleged in the Indictment, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year, and (2) at the same time, he knew the unlawfulness

---

[3] Citing *Langley*, 62 F.3d at 602, the Fourth Circuit first recognized in *Lockhart*, "[t]he [Supreme] Court's holding in *Rehaif* abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category." *Lockhart*, 947 F.3d at 196.

9

of possessing a firearm or ammunition as a convicted felon. ECF No. 50 at 4-5. The Government agrees, per *Rehaif*, a defendant's knowledge of his relevant status (that he was a felon, an alien unlawfully in this country, or the like) at the time he possessed the firearm and/or ammunition at issue is an element of an offense under §§ 922(g) and 924(a)(2). However, the Government disputes the defendant's knowledge that his relevant status placed him in a category of persons prohibited from possessing firearms or ammunition is also an element of the offense. ECF No. 60-1 at 15. This is so, the Government argues, because a defendant's knowledge of the unlawfulness of his action is "a burden normally reserved for statutes requiring proof of 'willfulness.'" *Id.* *See Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (reiterating general rule a defendant can be convicted of a "knowing" crime without proof he knew his conduct was unlawful, but cannot be convicted of a "willful" crime without proof he knew his conduct was unlawful), *id.* at 193 ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense"). *Cf. Cheek v. United States*, 498 U.S. 192, 199 (1991) (reiterating willfulness for purposes of criminal tax laws requires Government to prove the law imposed a duty on defendant, defendant knew of the duty, and defendant voluntarily and intentionally violated such duty).

Thus, the threshold dispute between Hunter and the Government is whether, per *Rehaif*, a defendant's knowledge that his relevant status placed him in a category of persons prohibited from possessing a firearm or ammunition at the time of his alleged unlawful possession of such items is an element of an offense under §§ 922(g) and 924(a)(2). In *United States v. Jackson*, 2021 WL 694848 (D.S.C. Feb. 23, 2021), this court recently resolved the same dispute, holding "the scope of a defendant's knowledge as required by *Rehaif* does not extend beyond the defendant's status

10

under §§ 922(g) and 924(a)(2), and thus does not require the Government to prove he also knew such status put him in a category of persons legally prohibited from possessing a firearm or ammunition." *Jackson*, 2021 WL 694848, at *6-9. Thus, for the reasons set forth in *Jackson*, the court will proceed to address Hunter's *Rehaif* claim in accord with this holding.

### B.  The Government's Motion for Summary Judgement.

Here, the Government moved for summary judgment in its favor because: (1) Hunter procedurally defaulted his *Rehaif* claim by failing to raise it on direct review; (2) Hunter cannot demonstrate cause and prejudice to excuse his default; and (3) Hunter cannot demonstrate his actual innocence to excuse his default.  ECF No. 60-1.  Hunter presented no argument in response. Hunter bears the burden of proving his grounds for collaterally attacking his guilty plea and conviction by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### 1. Hunter Procedurally Defaulted his *Rehaif* Claim.

The court agrees with the Government that under binding Supreme Court precedent Hunter procedurally defaulted his *Rehaif* claim on collateral review by failing to challenge on direct review the constitutional validity of his guilty plea to and conviction on Count 1 on the basis the court misinformed him about the elements of the offense.  *Bousley v. United States*, 523 U.S. 614, 621-23 (1998) (holding defendant who failed to challenge on direct review constitutional validity of guilty plea to federal offense on basis court misinformed him about elements of the offense procedurally defaulted the claim on collateral review).  The general rule on collateral review is a defendant's procedural default may be excused, thus allowing the court's consideration of his claim on the merits, if the defendant can show either cause for the default and resulting prejudice

11

or his actual innocence. *United States v. Fugit*, 703 F.3d 248, 253-54 (4th Cir. 2012). Thus, the court may consider Hunter's *Rehaif* claim on the merits on collateral review only if he can first demonstrate either cause for the procedural default and resulting actual prejudice or that he is actually innocent of violating §§ 922(g)(1) and 924(a)(2), as alleged in Count 1. *Id.*

### 2. Hunter Has Not Demonstrated Cause.

Having concluded Hunter procedurally defaulted his *Rehaif* claim on collateral review, the court now turns to consider whether he can demonstrate cause for failing to raise such a claim on direct review. The existence of cause ordinarily requires a defendant to show some objective external impediment prevented his counsel's efforts to construct or raise the claim. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). As noted earlier, Hunter presents no argument on this issue. Nonetheless, the court observes binding precedent at the time of Hunter's guilty plea hearing did not require the knowledge-of-status element in a prosecution under §§ 922(g)(1) and 924(a)(2). *See Langley*, 62 F.3d at 604-08 (holding defendant's knowledge of his felony status is not an essential element of offense under §§ 922(g)(1) and 924(a)(2)). To the extent Hunter would suggest this binding precedent prevented his counsel from raising a *Rehaif*-type claim on the basis of novelty or futility, and thus, serves to establish cause in a cause and prejudice analysis, this court rejected this argument in *United States v. Asmer*, 2020 WL 6827829 (D.S.C. Nov. 20, 2020). 2020 WL at 6827829, at *5-7 (relying on *Bousley* and *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) to reject § 2255 movant's argument novelty and futility of raising *Rehaif*-type claim demonstrated cause for failure to raise it on direct review). *See also Jackson*, 2021 WL 694848 at, *10 (holding, in context of § 2255 motion, defendant did not demonstrate cause to excuse his failure to raise *Rehaif*-type claim on direct review because no objective external impediments

12

prevented him from doing so); *Wilson v. United States*, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (holding, in context of § 2255 motion, defendant could not demonstrate cause for failure to raise *Rehaif*-type claim on direct review), *appeal filed*, No. 20-7436 (4th Cir. Sep. 28, 2020); *United States v. Battle*, 2020 WL 4925678, at *5-6 (W.D. Penn. Aug. 21, 2020) (same), *appeal filed*, No. 20-2726 (3d Cir. Aug. 25, 2020); *United States v. Vasquez-Ahumada*, 2020 WL 3213397, at *3 (W.D. Va. June 15, 2020) (same); *United States v. Mayo*, 2020 WL 2476167, at *2 (W.D. Va. May 13, 2020) (same); *United States v. Bryant*, 2020 WL 353424, at *2-3 (E.D.N.Y. Jan. 21, 2020) (same). *But see Merritt v. United States*, 2020 WL 6568315, at *5 (E.D. Va. Nov. 9, 2020) (holding in context of § 2255 motion defendant demonstrated cause for failure to raise *Rehaif*-type claim on direct review, but denying § 2255 motion because defendant did not demonstrate actual prejudice). As in *Asmer,* there were no objective external impediments preventing Hunter from raising a *Rehaif*-type claim on direct review. Accordingly, Hunter has not demonstrated cause to excuse his failure to raise his *Rehaif* claim on direct review.

### 3. Hunter Has Not Demonstrated Prejudice.

Because Hunter failed to demonstrate cause, he cannot avoid the procedural bar to the court considering his *Rehaif* claim on the merits in the instant § 2255 motion unless he can demonstrate his actual innocence. Accordingly, the court need not analyze the prejudice prong of the cause and prejudice analysis. However, for the sake of thoroughness, the court will proceed to consider whether, assuming *arguendo* Hunter demonstrated cause, he can demonstrate prejudice, which requires a showing of actual prejudice. *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

To show actual prejudice on collateral review, a defendant must "demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility

of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray*, 477 U.S. at 494). Thus, Hunter must show that, because of the court's *Rehaif* error at his guilty plea hearing, he was actually prejudiced by the denial of an entire judicial proceeding to which he had a right. *Cf. Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (on § 2255 motion, "when a defendant claims his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (when raising a forfeited attack on guilty plea on direct review under plain error standard, defendant can only demonstrate Rule 11 error affected his substantial rights by "show[ing] a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea").

Hunter makes no attempt to demonstrate the *Rehaif* error worked to his actual and substantial disadvantage. Indeed, he makes no assertion to the effect, but for the *Rehaif* error, he would not have pled guilty to Count 1 and instead would have insisted on going to trial. He also makes no assertion to the effect, had he gone to trial, a jury would likely not have convicted him. Under this state of affairs, the conclusion is foregone Hunter has failed to meet his burden of establishing actual prejudice on collateral review.

Although the court could correctly end its actual prejudice analysis here, the court notes the undisputed evidence in the habeas record powerfully corroborates this conclusion for it ably demonstrates: (1) the Government could have presented a strong case against Hunter on the missing *Rehaif* element for which he had no viable defense; and (2) pleading guilty to Count 1

14

offered Hunter a better outcome than he most assuredly would have achieved had he gone to trial. The Government's obligation to prove a defendant's knowledge of his felony status is not burdensome, as "knowledge can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).

Here, Hunter admitted in the factual basis for his guilty plea that he had been convicted of a crime punishable by more than one year in prison.  ECF No. 60-6 at 7.  In addition, as noted earlier, Hunter has no less than three South Carolina state court convictions for which he was originally sentenced to terms of imprisonment exceeding one year (*i.e.* five years, three years, and two years respectively).  ECF No. 44 at ¶¶ 54-55.  He also returned to custody on March 6, 2006, to serve concurrent five-year terms of imprisonment to which he was sentenced on each of his April 2005 convictions, following revocation of his prior sentences due to his numerous probation violations. *Id.* at ¶ 54.  Hunter then served two and one-half years of these concurrent sentences and the concurrent sentences on his April 2006 convictions. *Id.* at ¶¶ 54-55.  For all of these convictions, he never received any pardons or restoration of his rights to legally own or possess a firearm or ammunition.  ECF No. 44 at ¶ 21.  From this evidence, a jury could have easily inferred the missing *Rehaif* element.  Furthermore, the evidence illustrates Hunter had no viable defense to the element.

Not to be overlooked in the actual prejudice analysis is the fact, in exchange for Hunter's agreement to plead guilty to Count 1, the Government agreed not to charge Hunter for his related conduct of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), so long as he received a sentence of at least fifty-seven months imprisonment on Count 1.  Thus, by pleading guilty to Count 1, Hunter avoided prosecution on an additional federal charge

15

carrying a minimum sentence of sixty-months imprisonment, which was three months longer than the minimum sentence to which the Government would agree.  21 U.S.C. § 841(b)(1)(B)(viii).  Furthermore, by pleading guilty to Count 1, Hunter received a three-level decrease in his total offense level for acceptance of responsibility.  As noted earlier, without the decrease, Hunter's advisory sentencing range under the Guidelines would have gone from seventy to eighty-seven months imprisonment to ninety-seven to 121-months imprisonment.  Consequently, had Hunter elected to go to trial on Count 1 and lost, under the best case scenario, he would have been sentenced to a term of imprisonment nineteen months longer than he received by pleading guilty.

When the overwhelming strength of the case the Government could have presented at trial on the missing *Rehaif* element is considered with the benefit of the bargain Hunter would have lost had he not pled guilty, the likelihood Hunter would have chosen to roll the dice at trial had he known about the missing *Rehaif* element prior to his guilty plea is nil.  Most importantly, Hunter himself has not asserted he would have made this choice.[4]  Thus, Hunter has not demonstrated by a preponderance of the evidence he would have rejected the plea and gone to trial had the court informed him of the missing *Rehaif* element.[5]  In sum, Hunter has not demonstrated he suffered actual prejudice flowing from the *Rehaif* error in his case.

_____

[4] This case is easily distinguished from *Lee*, where the defendant satisfied the prejudice prong on his ineffective assistance of counsel claim in a § 2255 motion because, although he had no real defense to the charge of possessing ecstasy with intent to distribute and would have received a lesser prison sentence by accepting a plea rather than going to trial, he had "adequately demonstrated the reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation."  *Lee*, 137 S. Ct. at 1967.

[5] Given Hunter's failure to demonstrate cause and prejudice to excuse his procedural default, his failure to assert his actual innocence to excuse such default, and the lack of any viable defense, the court does not specifically address the issue of Hunter's actual innocence.

16

### III. Conclusion.

For the reasons set forth herein, Hunter is entitled to no relief on his § 2255 motion. Therefore, the Government's motion for summary judgment is granted in full, and Hunter's § 2255 motion is dismissed with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 8, 2021

17